UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Rodger Areyano, Sr,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:26-cv-02525-KES-GSA

**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO DENY DEFENDANT'S CROSS MOTION, TO REMAND THE MATTER FOR FURTHER PROCEEDINGS AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**

**(Docs. 15, 16)**

## I. Introduction

Plaintiff Rodger Areyano, Sr, seeks judicial review of a final decision of Defendant Commissioner of Social Security denying his applications for disability insurance benefits (DIB) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs. After reviewing the record, the undersigned finds that substantial evidence and applicable law do not support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

## II. Factual and Procedural Background

Plaintiff filed the applications on June 27, 2022. In both applications, Plaintiff alleged disability beginning June 27, 2022.

These claims were denied initially on October 26, 2023, and upon reconsideration on March 15, 2024. The ALJ held a hearing on February 27, 2025. On July 2, 2025, the ALJ issued an unfavorable decision. After the Appeals Council denied review on February 4, 2026, Plaintiff appealed to this Court on April 2, 2026.

## III. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.

"This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

"This is a highly deferential standard of review . . . ." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" Tackett, 180 F.3d at 1098 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Id. (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

## IV. Evaluating a Claimant's Alleged Disability

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically

> determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

Again, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099.

## V. The ALJ's Decision

At step one, the ALJ found that "The claimant has not engaged in substantial gainful activity since June 27, 2022, the alleged onset date." AR 25.

At step two, the ALJ found that "degenerative joint disease; degenerative disc disease; and obesity." AR 25.

At step three, the ALJ found that the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). AR 2.

Prior to step four, the ALJ evaluated Plaintiff's RFC and concluded as follows:

> the claimant has the residual functional capacity to perform a range of work at the light exertional level as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, he can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk about four hours total in an eight-hour workday, but he needs to change to a seated position once per half hour for up to a minute while remaining at the workstation and he needs to use a cane to stand or walk. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but he can never climb ladders or scaffolds. In addition, he can never work in dampness, wetness or extreme cold and he can never work at unprotected heights or around fastmoving machinery. AR 26.

At step four, the ALJ found "The claimant can perform his past relevant work as a motor vehicle dispatcher." AR 31. The ALJ made no alternative finding at step five. Accordingly, the ALJ concluded Plaintiff was not disabled since the alleged onset of June 27, 2022. AR 32.

## VI. Factual Background

The ALJ provided the following factual background:

> The claimant fell while at work [in July 2019] after which he reported right knee pain and a magnetic resonance image (MRI) of the showed a tear of the anterior cruciate ligament (ACL) with a grade 1-2 posterior MCL sprain and partial-thickness tear insertion of the semimembranosus tendon (Exhibits 5F, pp. 1-2; 15F, pp. 208-209; 23F, pp. 2-9, 14-15). Physicians diagnosed a tear of the ACL (see Exhibits 11F, p. 2; 17F, p. 14; 20F, p. 39) and thereafter, he underwent right ACL reconstruction surgery [in June 2020] (see Exhibits 11F, p. 2; 15F, pp. 102-104; 16F, pp. 2-7, 13-27). Post surgery, he reported some continuing pain, but no further surgical intervention was indicated (see Exhibit 11F, p. 2) and a subsequent examination showed the knee was structurally competent (see Exhibit 11F, p. 4). Another examination showed the wounds were healing fine with no sign of infection, no sign of DVT and neurovascularly, he was intact (Exhibit 20F, pp. 53, 56). The claimant received some acupuncture on the right knee, but his request for additional acupuncture on the right knee was declined (Exhibit 19F). In addition, he underwent physical therapy, as he reported continuing pain with stiffness in the right knee (see Exhibit 18F), but a report indicated physical therapy goals were met

(see Exhibit 18F, p. 14). AR 27

Treatment reports showed continuing chronic right knee pain with a limited range of motion (see Exhibits 4F, p. 1; 5F, p. 5), but an examination also showed he was walking independently well, using a brace and the knee appeared stable (see Exhibit 20F, pp. 8, 26). A subsequent MRI of the right knee showed he was status post ACL reconstruction with a stable and only mildly attenuated appearance of the posterior horn of the lateral meniscus suggesting a normal variation or postoperative changes (Exhibits 4F, pp. 1-2; 5F, pp. 5-6). The claimant indicated the knee pain persisted, but an additional examination revealed no erythema or edema with well-healed prior incisions (see Exhibit 13F, p. 2) and physicians diagnosed primary osteoarthritis of the right knee (see Exhibit 13F, p. 3). He underwent an injection into the right knee (see Exhibit 13F, p. 5) and an x-ray revealed only mild tricompartmental osteoarthritic changes with only mild joint space narrowing and small peripheral spur formation (see Exhibit 13F, p. 7). In addition, no significant right knee joint effusion was seen (Exhibit 13F, p. 7). AR 27

The claimant also reported experiencing left knee pain with an occasional loss of balance (see Exhibits 3F, p. 1; 5F, p. 3) and an MRI of the left knee done in July 2022 showed a complex tear of the body and posterior horn of the medical meniscus with degeneration and/or a sprain of the ACL, but only a mild sprain of the medical collateral ligament (see Exhibits 3F, pp. 1-2; 5F, pp. 3-4; 9F, pp. 53-54; 23F, pp. 10-11). There was also only a small joint effusion and only a small 5mm benign enchondroma withing the proximal tibial metaphysis (Exhibits 3F, pp. 1-2; 5F, pp. 3-4; 9F, pp. 53-54; 23F, pp. 10-11). A subsequent MRI revealed a tear of the posterior horn and body of the medial meniscus with full-thickness cartilage loss in the medial compartment, but the subcutaneous tissue was unremarkable and only a minimal Baker's cyst was noted (Exhibits 8F, pp. 1-2; 9F, pp. 51-52). Physicians diagnosed osteoarthritis of the left knee joint (see Exhibits 9F, pp. 3, 23; 14F, p. 19), but a Romberg test was normal and tandem walking with one foot in front of the other was satisfactory (see Exhibit 7F, p. 2). In addition, an ultrasound of the bilateral lower extremities revealed no significant focal stenosis or arterial occlusion (see Exhibit 23F, pp. 16-17) and an x-ray of the left foot was negative (see Exhibit 6F, pp. 40-41). AR 27 & 28

## VII. <u>Issue Presented</u>

Plaintiff asserts two claims of error. First, "The RFC is not supported by substantial evidence." MSJ at 2. (Hereinafter Claim 1). More specifically, Plaintiff contends the ALJ improperly discounted the December 18, 2023 Physical Medical Source Statement (MSS) of "long time treating provider, Kevin B. Calhoun, M.D., who has been treating Mr. Areyano since September 2019." MSJ at 2. Second, without a corresponding section header, Plaintiff argues:

a review of the record as a whole reveals that the ALJ harmfully and erroneously

> failed to specifically address, much less even summarize, probative aspects of Mr. Areyano's hearing testimony regarding his less than sedentary standing, sitting and walking limitations, given his extensive bilateral knee impairments which not only renders the ALJ's rejection of Dr. Calhoun's "off task" limitations not supported by substantial evidence, but also renders the ALJ's rejection of Mr. Areyano's significiant, outcome determinative less than sedentary limitations not supported by clear and convincing evidence . . . . MSJ at 13

(Hereinafter Claim 2)

## A. Claim I (RFC; Dr. Calhoun's Opinion)

### 1. Applicable Law

#### a. RFC Generally

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity (RFC). *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including non-severe ones. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); SSR 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton,* 799 F.2d 1403, 1408).

#### b. Medical Opinions

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. Id. "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Woods v. Kijakazi, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

To provide substantial evidence of supportability or consistency finding, an ALJ need only provide "more than a mere scintilla but less than a preponderance" of the evidence. *Tackett*, 180 F.3d at 1098. Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 416.920c(c)(1)). Consistency "means the extent to which a medical opinion is

'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 416.920c(c)(2)).

In addition, neither supportability nor consistency is controlling; they are considered in relation to each other and to any other factors an ALJ finds relevant. 20 C.F.R. § 404.1520c(b)(2).

While a medical source's relationship with the claimant is to be considered, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 32 F.4th at 791.

Of important relevance to this case, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings. Id.at 792.

In the end, supportability merely asks whether the results of a specific medical provider's examination support that medical provider's opinion, whereas consistency is evidence from other medical sources. See, Thomas M. v SSA Comm'r, 2026 US Dist. Lexis 216811.

**2. <u>Analysis</u>**

Dr. Calhoun completed a medical opinion called a physical medical source statement (MSS). AR 668. Plaintiff offers the following (undisputed) recitation of Dr. Calhoun's opinion:

> On December 18, 2023, long time treating provider, Kevin B. Calhoun, M.D., who has been treating Mr. Areyano since September 2019, completed a physical medical source statement (MSS), concluding Mr. Areyano's diagnoses of Tear of the Medial Meniscus in the Right Knee, Other Chronic Pain and Pain in Right Knee causing "pain in the left knee due to compensating," with clinical findings and objective signs of: "bilateral knee weakness, antalgic gait, numbness, stiffness, and atrophy," and neurological abnormalities of: "Right Leg Hypersensitivity" and "Gait Derangement" limits Mr. Areyano from: walking no more than ½ block, without rest or severe pain; sitting 20 minutes at one time; standing 15 minutes at one time (AR 665); sitting, standing and/or walking less than 2 hours in an 8-hour workday; and requires him to shift positions "at will" from

> sitting, standing or walking; with prolonged sitting, requires him to elevate his legs at knee level "as needed"; that a "cane or hand-held assistive device is medically necessary" due to "imbalance," "pain," and "weakness;" occasionally lift and/or carry 20 pounds; that he is limited to "frequently" lifting and carrying less than 10 pounds (AR 666); that he is limited to "rarely" (1% to 5% of an 8-hour workday) stoop/bend and climb stairs; to "never" crouch/squat or climb ladders; that he is likely to be "off task" more than 25% of an 8- hour workday; that he is likely to have "good days" and "bad days" (AR 667) resulting in more than 4 unplanned absences per month; and would need unscheduled breaks during an working day for 10-20 minutes. (AR 668). MSJ at 2.

The ALJ found Dr. Calhoun's opinion unpersuasive for the following reasons:

> I find the opinion of Dr. Calhoun (see Exhibit 10F) unpersuasive because it is inconsistent with the medical and other evidence. For example, it is inconsistent with and overrestrictive, especially considering an examination done in February 2024 which showed a normal gait with grossly intact cranial nerves (Exhibit 14F, p. 72). Furthermore, the "off task" limitation is inconsistent with the claimant's own report that he can take care of himself with no difficulty dressing or bathing and no difficulty doing errands alone (Exhibits 6F, p. 21; 9F, pp. 4, 15, 37; 14F, pp. 5, 18, 30). In addition, while Dr. Calhoun cites knee weakness, an antalgic gait, numbness, stiffness, and atrophy as symptoms supporting the opinion (see Exhibit 10F, p. 1), the record also showed that at times, he exhibited normal coordination with no cranial nerve deficit, <u>dysarthria, or facial asymmetry</u> (see Exhibit 12F, p. 3) and while he does report some pain, as indicated above, it waxes and wanes. Accordingly, this opinion is over-restrictive and <u>not fully support by or consistent with the objective evidence of record</u>. AR 29 (emphasis added)

However, upon close examination of the ALJ's analysis, it falls short of a proper supportability finding resulting in harmful error as explained below.

First, the ALJ mischaracterized Dr. Calhoun's findings of weakness, antalgic gait and atrophy as <u>symptoms</u>, when in fact those were "clinical findings and objective signs" that the MSS form asks the provider to identify in support of the opinion, which Dr. Calhoun did. AR 665.

Second, the ALJ referenced that very form when stating, "On December 18, 2023, Kevin B. Calhoun, MD. completed a physical medical source statement (see Exhibit 10F)". AR 29.

Third, as Plaintiff points out, Dr. Calhoun documented the following:

> he had consistent examination findings of reduced knee right knee flexion with pain (AR 842, 874, 1185, 1246; 1261-1264); reduced left knee flexion (AR

> 874, 1185); history of right knee surgery, acute medial meniscus tear of the right knee; that he required a cane to ambulate and a rigid knee brace (AR 929, 931); that by July 2021, he required a three-legged cane to help with balance due to difficulty ambulating and increased right knee instability (AR 865, 870, 885-886, 898-899, 910-911, 931-932, 943-944); that by February 2022 Mr. Areyano required a soft knee brace and four-leg cane to help with stability and walking for the right knee, noting that a hinged right knee brace had been received but did not fit (AR 859-860; 875-876); that by June 2023, Mr. Areyano required a left knee brace and approval for treatment of meniscus tear involving the left knee and injections due to "instability and pain" (AR 1213; 1273); that by September 6, 2023, Mr. Areyano required a right "hinged knee brace" to replace worn out brace (AR 1226-1227)".
>
> MSJ at 4 & 5.

In sum, Dr. Calhoun's opinion was supported by relevant objective findings, not merely by subjective complaints. As the applicable regulation states, "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).

In addition, Dr. Calhoun also provided supporting records from his specialty worker's injury clinic, while the ALJ on the other hand focused on records from a PCP.

Further, in describing Plaintiff's waxing and waning pain levels, the ALJ cites almost entirely to exhibit 14F:

> the clamant reported his pain waxes and wanes as at times his pain was reported as a nine or ten on a scale of ten (see Exhibits 14F[1], pp. 2, 9, 62; 15F, p. 11), but at others, he reported his pain was only a zero on a scale of ten (see Exhibit 14F, pp. 56, 67, 74)." AR 28.

However, these were Office Treatment Records dated 01/18/2024 to 01/09/2025, from United Health Centers Of The San Joaquin Valley, by a PCP who documented generalized pain

[1] See Supplemental to AR, ECF No. 11.

scale responses that were not specific to any body part. See Supplemental AR, ECF. No 11 (AR 715-820). On the other hand, as noted above, Dr. Calhoun's opinion was supported by records from his clinic at Exhibit 15F (Supplemental AR, ECF No. 11, at AR 821-1277. These records were from Workmed California Inc, a clinic for injured workers where Plaintiff was treated for his injured knee and where Dr. Calhoun was the attending provider. These records spanned 09/13/2019 to 12/18/2023 and predominately showed pain levels in the severe range from <u>7/10 to 10/10</u>, with very few outliers. MSJ at 3 (citing Ex. 15F, ECF No. 11, AR 827, 829, 834) 841-842, 857, 859, 863-864; 868-870; 873, 875, 883, 885, 896, 898, 908, 910). (Supplemental AR, ECF No. 11-1).

Dr. Calhoun's clinic records seem to be a better indicator of Plaintiff's knee symptoms than the records from a PCP.

When looking at records outside of those supplied by Dr. Calhoun's clinic, the ALJ relied on Plaintiff's August 19, 2023 consultative examination with Dr. Van Kirk. AR 590. Here, the ALJ explained:

> I find the opinion of Dr. Van Kirk (see Exhibit 7F) persuasive because it is consistent with the medical and other evidence. For example, it is consistent with and adequately accounts for the claimant's impairments, especially considering reports showing that at times, he exhibited a normal gait (see Exhibit 6F, p. 12) with grossly intact sensation, normal motor strength and normal movement of all extremities (see Exhibit 6F, p. 24). Dr. Van Kirk's objective examination findings (see Exhibit 7F) also support the opinion, and the opinion is founded upon an in-person examination of the claimant. AR 30.

However, the ALJ's statement about a normal gate does not tell the whole story. While it is true that Dr. Van Kirk did state "I note that he has a normal heel/toe gait pattern," importantly though he also stated, "<u>I do detect a moderate limp</u> favoring the right lower extremity when bearing weight." (AR 591) (emphasis added). This latter statement by Dr. Kirk does not necessarily imply a fully normal gait and somewhat corroborates Dr. Calhoun's opinion regarding a less than sedentary standing and walking capacity. Defendant also cites AR 700 and AR 703—progress notes dated January 12, 2024 and April 23, 2024—observing that Plaintiff's right knee was "stable

to stress testing," yet the same record also notes that knee strength was reduced to 4/5 in flexion and extension. AR 700, 703. Additionally, other post-surgical records document strength of 3-/5 knee in flexion and extension of the right knee. AR 1058 (ECF No. 11). Thus, these records corroborate Dr. Calhoun's opinion noting weakness.

In another example, Defendant cites AR 672—a December 2021 ACL reconstruction progress note—indicating the knee was "structurally competent." However again, that same record notes reduced ROM measurement of 80 degrees (normal knee flexion is 150),[2] and other records note ROM of 65 degrees in flexion (AR 963), 80 degrees in flexion (AR 1019), 90 degrees in flexion (AR 980), and 100 degrees in flexion (AR 829). Thus, these records corroborate Dr. Calhoun's opinion noting objective stiffness.

In the end, Dr. Calhoun's opinion was supported by the explanation and records he and his clinic provided, and his opinion was consistent with many other objective findings in the record. Here, the ALJ's errors included:

1- dismissing as "symptoms" Dr. Calhoun's identified "clinical findings and objective signs" such as weakness and antalgic gait (AR 29, citing AR 665);

2- overlooking that the consultative examiner Dr. Van Kirk identified a moderate limp ( AR 591 )

3- emphasizing waxing and waning pain scale ratings from a PCP (Ex. 14F), as opposed to Dr. Calhoun's specialty clinic (Ex. 15F) which documented pain scale ratings consistently in the severe range of 7 to 10; and

4- isolating benign findings at the expense of abnormal ones, such as the ACL reconstruction progress note indicating the knee was "structurally competent" (AR 672), while

[2] https://www.physio-pedia.com/Range_of_Motion_Normative_Values
https://archive.cdc.gov/www_cdc_gov/ncbddd/jointrom/index.html

overlooking that the record notes reduced range of motion. (AR 963, 1019, 980, 829).

As set forth above, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings. Because this was not done here by the ALJ in regard to Dr. Calhoun's opinion, the ALJ's rejection of it was not supported by substantial evidence.

**B. Subjective Complaints**

Here, an analysis of this issue is not strictly necessary or even helpful on this record. As Plaintiff explains and which Defendant does not dispute, the ALJ offered little if any summary or analysis of Plaintiff's testimony.

Plaintiff's description of his pertinent testimony largely echoed the limitations identified by Dr. Calhoun, namely "his less than sedentary standing, sitting and walking limitations, given his extensive bilateral knee impairments." See MSJ at 13.

Given that the ALJ's rejection of Dr. Calhoun's opinion is unsupported by substantial evidence, it follows that the ALJ's largely unexplained rejection of Plaintiff's similar testimony was equally unsupported.

Thus, because the undersigned recommends that remand is appropriate for proper evaluation of Dr. Calhoun's opinion, the Court need not reach Plaintiff's additional assertion of error directed to his subjective symptom complaints as both should be revisited on remand. See AR 30. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); see also Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide

plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### C. Further Consideration of the RFC

Finally, because Dr. Calhoun's opinion described a less than sedentary exertional RFC whereas the ALJ reached a light exertional RFC, this difference may well affect the VE's responses regarding Plaintiff's ability to perform his past relevant work at step four as well as other work in the national economy at step five and thus needs to be addressed on remand.

## VIII. Findings and Recommendation

For the reasons stated above, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.

Accordingly, the recommendation is that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, be **GRANTED**
2. Defendant's Cross Motion, ECF No. 16, be **DENIED**
3. That this action be **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with these Findings and Recommendations.
4. That the Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

## X. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson, 772 F.3d 834, 838-39 (9th

Cir. 2014).

IT IS SO ORDERED.

Dated: **October 11, 2026**

**/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE